# GMAC Mortgage, LLC vs. First American Title Insurance Company.

Suffolk. December 4, 2012. - April 4, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Insurance,* Title insurance, Coverage, Insurer's obligation to defend. *Real Property,* Title insurance. *Contract,* Insurance. *Mortgage,* Insurance of mortgagee's interest. *Land Court,* Jurisdiction. *Practice, Civil,* Complaint, Transfer of action to Superior Court, Removal of case to federal court. *Supreme Judicial Court,* Certification of questions of law.

This court answered questions of law certified to it by the United States District Court where, although the United States District Court judge had already reached a decision based on the law as he reasonably predicted it, the case remained pending and this court's response would determine the ultimate outcome. [736-738]
This court concluded that under a real estate title insurance policy, the insurer has no duty to defend the insured in an entire lawsuit where one claim comes within the scope of the title insurance policy coverage and the other claims do not; accordingly, the title insurer is only obliged to defend the insured on the covered claims. [738-741]
This court concluded that under a real estate title insurance policy, in circumstances where the insurer initiates litigation to cure a defect covered by the policy, the insurer has no duty, with the possible exception of compulsory counterclaims, to defend the insured against all reasonably foreseeable counterclaims. [741-744]

Certification of questions of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Richard E. Briansky* for the plaintiff.

*Jason A. Manekas* for the defendant.

Spina, J. This case involves multiple litigations among three parties — First American Title Insurance Company (First American), the insurer; GMAC Mortgage, LLC (GMAC), the insured mortgagee; and Elizabeth Moore, the homeowner — arising out of a defect in the title to Moore's home. First Ameri-

can brought suit on behalf of GMAC in the Land Court, seeking to reform the deed to Moore's property or to equitably subrogate her interest in the property behind GMAC's mortgage. Because of the Land Court's jurisdictional restrictions, Moore then initiated suit in the Superior Court against GMAC, alleging intentional infliction of emotional distress and violation of G. L. c. 93A for GMAC's unfair and deceptive conduct in pursuing foreclosure, and "money had and received" for mortgage payments alleged to have been made to GMAC in error. Because the two actions were closely related, the Chief Justice for Administration and Management ordered, pursuant to his power under G. L. c. 211B, § 9 (xix), that the Land Court action be transferred to the Superior Court and consolidated with Moore's action. However, after the order of transfer, but before the Land Court action was docketed in the Superior Court, counsel for GMAC removed Moore's litigation to the United States District Court for the District of Massachusetts. Therefore, the Land Court action never formally was consolidated with Moore's action in the Superior Court. However, GMAC raised counterclaims in Moore's action, now in the United States District Court, that duplicated the reformation and equitable subrogation claims asserted in the Land Court, and an attorney for First American appeared on behalf of GMAC in the Federal court to prosecute these title-related counterclaims. GMAC retained its own attorney to defend against the remainder of Moore's action.[1] Therefore, all claims in both the original Land Court and Superior Court actions were a part of the Federal court case. The case settled on the first day of trial.

GMAC filed a complaint and request for injunctive relief against First American in the United States District Court seeking, in relevant part, to recover from First American the costs

---

[1]The affirmative defenses that the attorney for GMAC Mortgage, LLC (GMAC), asserted in Elizabeth Moore's action were that she failed to state a claim; her claims were barred by the doctrine of unclean hands, laches, and estoppel, and the doctrine of mutual mistake; and her G. L. c. 93A claim failed to satisfy the filing prerequisites. The counterclaims that counsel for GMAC initially asserted (but First American agreed to prosecute) were for a judgment declaring that Moore's interest in the property was subject to the mortgage, and for reformation of the mortgage and equitable subrogation.

GMAC incurred in defending against Moore's three claims.[2] Following a bench trial, the United States District Court judge determined that First American had no obligation under its title insurance policy to pay GMAC's defense costs. However, recognizing that the question of the scope of a title insurer's duty to defend presented an issue of first impression in the Commonwealth, the judge stayed the proceedings pending this court's response to two questions that he certified pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981). The certified questions are:

> "1. Under Massachusetts law, when there is an overlap between one or more of the counts of the complaint and the terms of this standard title insurance policy, does the insurer have a duty to defend the insured against all claims in the action?"[3]

> "2. Under Massachusetts law, when a title insurance contract gives the insurer the right to engage in litigation to cure a defect covered by the policy, does an insurer initiating litigation have a duty to defend the insured against all *reasonably foreseeable counterclaims*?" (Emphasis supplied.)

We answer "No" to both questions.

1. *Facts.* Because our task is limited to responding to the certified questions, we do not delve deeply into the factual complexities of this case. We merely recount several significant facts as the District Court judge found them.

Moore and her husband, Thomas, lived in a home in Billerica, the title to which was in Thomas's name. In 2001, for the

---

[2]GMAC's request that First American actually defend it in Moore's action became moot when the case settled. Therefore, the dispute became about recovering the costs of defending against Moore's claims.

[3]The judge's use of the word "overlap" indicates that aspects of the three causes of action that Moore asserts in her complaint, which the judge determined fall outside the scope of the title insurance policy, implicate the underlying defect in the title to Moore's home. It is because a component of Moore's action implicated the title defect that First American prosecuted the counterclaims in Moore's action. The question, recast slightly, is whether First American then had a duty to defend GMAC in the entire action. See *Kartell* v. *Blue Shield of Mass., Inc.*, 384 Mass. 409, 425-426 (1981).

purpose of refinancing the property, Thomas executed a note and a mortgage to GMAC's predecessor corporation (which obtained a title insurance policy from an agent of First American), and a deed conveying the property from himself to himself and his wife as tenants by the entirety, G. L. c. 184, § 8. The parties intended for the *mortgage* to be recorded *before the deed* creating the tenancy by the entirety. However, the *deed* was mistakenly recorded *before the mortgage*. Thomas died in 2007. The undisputed consequence was that record title to the property vested solely in Moore, to the exclusion of GMAC. See *Coraccio* v. *Lowell Five Cents Sav. Bank,* 415 Mass. 145, 150-152 (1993). See also H.J. Alperin, Summary of Basic Law § 15.31, at 161, 165-168 (4th ed. 2007). Moreover, GMAC no longer had a clear right to repayment because the short statute of limitations to collect on the underlying note, signed only by Thomas, expired one year after his death. G. L. c. 190B, § 3-803 (*a*) (formerly G. L. c. 197, § 9).

Pursuant to the title insurance policy it issued to GMAC, First American could resolve this title defect[4] either by negotiating with Moore, by negotiating with GMAC (to assume title and proceed as it thought fit), or by initiating litigation to cure the title defect. First American chose the latter course, and the present litigation ensued.

*2. Preliminary issues.* Before we reach the certified questions, we briefly dispose of two threshold issues: whether to answer the certified questions at all, and whether the title insurance contract covers the causes of action asserted in Moore's action.

a. *Whether to answer the certified questions.* First American urges that we refrain from answering the certified questions on the ground that they are untimely and unnecessary, as the United States District Court judge already reached a decision based on the law as he reasonably predicted it. We decline to accept First American's invitation to avoid this case in its entirety. Because the present matter remains pending (the case is administratively closed and the proceedings stayed), our response to the certified questions will determine the ultimate outcome. See S.J.C. Rule

---

[4]First American does not dispute that it is liable under the title insurance policy it issued to GMAC for title defects.

1:03. Moreover, as the judge noted, there is no controlling precedent in the decisions of this court that addresses the issues raised in the certified questions. See *id.* See generally J. Goldschmidt, Certification of Questions of Law: Federalism in Practice 35-39 (1995). Therefore, we will not forgo the opportunity to weigh in on a significant question implicating, in the words of the judge, the "interface between the general law of insurance (statutory and decisional) in Massachusetts and that specialized type of insurance known as title insurance."

b. *Whether the title insurance contract covers Moore's claims.* GMAC asks that we conclude that the policy covers the three counts Moore asserted in her complaint on the ground that the allegations in her "complaint are 'reasonably susceptible' of an interpretation that they state . . . a claim covered by the policy terms."[5] *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 146 (1984). The United States District Court judge concluded that Moore's three causes of action against GMAC for intentional infliction of emotional distress; violation of G. L. c. 93A; and "money had and received," "although . . . inextricably intertwined, and related to the title defect . . . were not covered under the title insurance contract."

"The interpretation of a contract is a question of law for the court." *Eigerman* v. *Putnam Invs., Inc.,* 450 Mass. 281, 287 (2007). Courts decide this type of question routinely, and such decisions are reviewable. See, e.g., *C.A. Acquisition Newco, LLC* v. *DHL Express (USA), Inc.,* 696 F.3d 109, 112 (1st Cir. 2012), quoting *Office Max, Inc.* v. *Levesque,* 658 F.3d 94, 97 (1st Cir. 2011). However, we do not sit in review of the United States District Court judge's decision in the present case. Therefore, we assume that Moore's stated causes of action are not covered pursuant to the title insurance contract, and consider only

---

[5]In relevant part, the title insurance policy states that First American:

"[A]t its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which a third party asserts a claim adverse to the title or interest as insured, *but only* as to those *stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy.* . . . [First American] will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy." (Emphasis added.)

whether First American was nevertheless obligated, by virtue of the implicated title defect, to defend GMAC against the entire action as a matter of law. See *Philadelphia Indem. Ins. Co.* v. *Chicago Title Ins. Co.*, 871 F. Supp. 2d 744, 753 (N.D. Ill. 2012) (duty to provide complete defense arises as matter of State law); Little Italy Dev., LLC *vs*. Chicago Title Ins. Co., U.S. Dist. Ct. No. 1:11CV112, slip op. at 5 (N.D. Ohio June 24, 2011) (same). See also *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 199 (1999) (*Simplex*), citing *Camp Dresser & McKee, Inc.* v. *Home Ins. Co.*, 30 Mass. App. Ct. 318, 322 (1991) ("That some, or even many, of the underlying claims may fall outside the coverage does not excuse [the general liability insurer] from its duty to defend these actions").

3. *Certified questions.* In Massachusetts, general liability insurers have a broad duty to defend their policy holders. See, e.g., *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. 366, 368 (1996); *Boston Symphony Orch., Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10 (1989). Because "[i]t is not uncommon for a lawsuit against an insured to assert some claims that are covered by the insurance policy and others that are not," the general rule in Massachusetts in the general liability insurance context is that "an insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint." *Liberty Mut. Ins. Co.* v. *Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001) (*Liberty Mut. Ins. Co.*), citing *Mt. Airy Ins. Co.* v. *Greenbaum*, 127 F.3d 15, 19 (1st Cir. 1997). Said differently, "if an insurer has a duty to defend one count of a complaint, it must defend them all." *Mt. Airy Ins. Co.* v. *Greenbaum, supra*, citing *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 732 n.1 (1992) (*Aetna*). See *Simplex, supra*; A.D. Windt, Insurance Claims and Disputes: Representation of Insureds & Insurers § 4.12, at 126-127 (1982) (Insurance Claims and Disputes). This is known as the "in for one, in for all" or the "complete defense" rule.[6] See 1 J.D. Palomar, Title Insur-

[6]Authority is split over whether parties to an insurance contract may contract around the default legal principle that, when a general liability insurer has any duty to defend, it must defend against all claims, both covered and noncovered. Compare *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 732 n.1 (1992) (complete defense rule, "barring a contrary agreement with the

ance Law § 11:2, at 907 (2011); A.D. Windt, Insurance Claims and Disputes, *supra* at § 4.13, at 128. A rationale behind this general rule is that dividing representation between covered and noncovered claims is impractical. See A.D. Windt, Insurance Claims and Disputes, *supra.*

The "in for one, in for all" rule of general liability insurance defense typically is invoked where an insurance policy covers at least one cause of action or count in a complaint, but does not cover other claims asserted in the complaint in the same lawsuit. See *Liberty Mut. Ins. Co., supra*; *Mt. Airy Ins. Co.* v. *Greenbaum, supra.* Although the Federal court judge concluded that the three causes of action Moore asserted in her complaint were not covered under the title insurance policy, see *Liberty Mut. Ins. Co., supra*, we assume that First American was nevertheless "in for one," in the sense that its prosecution of the title reformation and equitable subrogation counterclaims was inextricably intertwined with the defense of Moore's action. Thus, we turn to the certified questions to address the issue whether First American was also "in for all."

a. *Question one.* The first question asks whether the "in for one, in for all" rule of general liability insurance defense — that an insurer must defend an entire action against an insured where its policy potentially covers any one claim — applies in the unique title insurance context. We hold that it does not.[7]

"[A] title insurance policy is not an agreement to guarantee or a warranty of the state of the title . . . . It is, rather, an agreement to indemnify the policyholder . . . against loss through defects in title." B. Burke, Law of Title Insurance § 2.01[A], at 2-5 (3d ed. Supp. 2012), quoting *Rood* v. *Commonwealth Land Title Ins. Co.*, 936 A.2d 488, 493 (Pa. Super.

insured"), with *Philadelphia Indem. Ins. Co.* v. *Chicago Title Ins. Co.*, 871 F. Supp. 2d 744, 752, 755 (N.D. Ill. 2012) (contract cannot supersede complete defense obligation); Little Italy Dev., LLC *vs.* Chicago Title Ins. Co., U.S. Dist. Ct. No. 1:11CV112, slip op. at 5 (N.D. Ohio June 24, 2011) (same). Because we determine that title insurers have no duty to defend either noncovered or most reasonably foreseeable claims, this issue is not implicated here, and we leave further consideration for another day.

[7]We acknowledge the paucity of cases involving the scope of title insurance defense. Indeed, we may revisit the question whether "in for one, in for all" should apply in the unique, title insurance context if lessons that emerge from practice so warrant.

Ct. 2007). Before issuing a policy, a title insurer searches real property records for title defects and, if any are discovered, excludes such known defects from the policy coverage. See 1 J.D. Palomar, Title Insurance Law, *supra* at § 1:15, at 36. In so doing, the title insurer discloses such defects to the potential purchaser of the policy, thus affording an opportunity to cure any title defects before the real estate transaction closes. *Id.* at § 1:15, at 36-37.

The "in for one, in for all" rule is inapplicable in the title insurance context because title insurance is fundamentally different from general liability insurance. See B. Burke, Law of Title Insurance, *supra* at § 2.01[B], at 2-16 (Supp. 2011); 1 J.D. Palomar, Title Insurance Law, *supra* at §§ 1:14-1:17, at 36-45. "Unlike other forms of insurance, title insurance is not directed at future risks. It is directed at risks that are already in existence on the date the policy is issued." B. Burke, Law of Title Insurance, *supra* at § 2.01[C], at 2-22 (Supp. 2008). Because title insurance narrowly covers defects in, or encumbrances on, titles that are in existence when a policy issues, title insurers attempt to eliminate or reduce risks prior to the issuance of a title insurance policy. See *id.* at § 2.01[C], at 2-22 to 2-22.1 (Supp. 2008), quoting *Fidelity Title Co.* v. *Washington Dep't of Revenue*, 745 P.2d 530, 531 (Wash. App. 1987). See also 1 J.D. Palomar, Title Insurance Law, *supra* at § 1:15, at 36-37 (title insurance as risk eliminating; general liability insurance as risk assuming). Such differences are reflected in the differing payment schemes and length of coverage as between title and general liability insurance: title insurance typically requires a single premium payment (often a percentage of the property value) for indefinite coverage, whereas general liability insurance requires continuation premiums (based on the likelihood a future event will occur) for coverage during a set term. See 1 J.D. Palomar, Title Insurance Law, *supra* at § 1:17, at 44. In light of the limited purpose and scope of title as compared to general liability insurance,[8] title insurers should not be obliged to defend against noncovered claims just because they may be asserted in litigation that also implicates title-related issues to a

---

[8]The American Land Title Association's (ALTA's) standard title insurance policy form reflects the limited scope of title insurers' defense obligation and the view that "in for one, in for all" is inapplicable in the title insurance

limited extent. Moreover, because title issues are discrete, they can be bifurcated fairly easily from related claims, see *infra*;[9] thus, the central policy behind "in for one, in for all" — that parsing multiple claims is not feasible — is not implicated to the same extent in the title insurance context as in the general liability insurance context. For these reasons, it is not surprising that Massachusetts cases that discuss the "in for one, in for all" rule do so in the context of general liability insurance. See *Simplex, supra*; *Aetna, supra*. The United States District Court judge correctly stated Massachusetts law in his determination that "in the unique circumstances presented by the title insurance policy, First American [is] not obligated to pay for the defense of [Moore's] related claims."

b. *Question two.* This question asks whether a title insurer that elects to cure a title defect by initiating litigation[10] (permitted, as

context. See 1 J.D. Palomar, Title Insurance Law § 11:2, at 908 (2011). Standard title insurance policies typically state "their defense obligation in terms of defending particular *causes of action*" (emphasis supplied), whereas general liability insurers often state their defense obligations more broadly, in terms of "suits" or "actions." *Buss* v. *Superior Court of Los Angeles County*, 16 Cal. 4th 35, 62, 64 (1997) (Kennard, J., dissenting). See 1 J.D. Palomar, Title Insurance Law, *supra*. See also *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co.*, 429 Mass. 196, 198 (1999) (general liability policy required defense of "any suit"); *Boston Symphony Orch., Inc.* v. *Commercial Union Ins., Co.*, 406 Mass. 7, 10 (1989) (same, as to any "action"). In addition to reflecting the intended scope of the differing defense obligations, this linguistic difference also reflects general liability insurers' interest in exercising complete control over litigation against an insured. *Buss* v. *Superior Court of Los Angeles County, supra* at 63 (Kennard, J., dissenting) ("In exchange for the added expense of defending claims not potentially covered, the [general liability] insurer acquires a freer hand and enhanced control in the defense of those claims that are potentially covered").

[9]Although the United States District Court judge denied GMAC's motion to bifurcate the trial of Moore's claims from the title reformation and equitable subrogation counterclaims, a plaintiff's noncovered claims could be stayed until the title issues were resolved in the appropriate circumstance. This natural bifurcation of claims lends further support to our conclusion that a title insurer is not required to defend against noncovered claims, even where there is an underlying title defect that the insurance company is obligated to defend.

[10]This question highlights another fundamental difference between title and general liability insurers. Title insurers, under ALTA's standard title insurance policy, may advance the interests of the insured by initiating suit to cure a title defect on the insured's behalf. Thus, title insurers often assume an offensive and defensive posture, whereas general liability insurers typically assume a purely defensive posture.

one of several options, under a title insurance policy) has a duty to defend an insured against "reasonably foreseeable counterclaims."[11] Anticipating correctly that we would hold the "in for one, in for all" rule inapplicable in the title insurance context, this question thus asks that we consider an alternate justification for imposing a broader defense obligation on title insurers than may be required under a title insurance policy. GMAC contends that title insurers invite the risk of counterclaims by initiating litigation to cure title defects and, thus, urges us to answer this question in the affirmative. We decline to do so.[12]

We return to our touchstone, that title insurance is unlike general liability insurance in that title insurance coverage is narrow. See B. Burke, Law of Title Insurance, *supra* at § 2.01[B], at 2-16 (Supp. 2011); 1 J.D. Palomar, Title Insurance Law, *supra* at §§ 1:14-1:17, at 36-44. Because the issues covered by a title policy are relatively discrete, an attorney for a title insurance company (who typically specializes in real property issues) feasibly can defend only the title-related issues. Thus, we decline to impose a complete defense obligation on title insurers. Were we instead to impose on title insurers a duty to defend insureds against reasonably foreseeable counterclaims, this "reasonably foreseeable" rule of title insurance defense would quickly become a work-around to our conclusion that "in for one, in for all" does not apply in the title insurance context. See A.D. Windt, Insurance Claims and Disputes, *supra* at § 4.12, at 127 (no duty to

---

[11]First American asserts that this question is merely hypothetical because, technically, Moore did not assert "counterclaims." Moore did not assert her three claims against GMAC as counterclaims in the initial Land Court action because she could not: her three claims for money damages were outside the jurisdiction of the Land Court. See G. L. c. 185, § 1. Thus, Moore asserted her claims as a plaintiff in the Superior Court. Notwithstanding this technicality, we (like the United States District Court judge) consider Moore's three claims "effectively counterclaims," because her claims came on the heels of the Land Court action and were only brought in the Superior Court because of the Land Court's limited jurisdiction, and because the two actions were supposed to have been consolidated.

[12]Because we do not impose on First American a broader duty than articulated in its title insurance contract (with the possible exception of the duty to defend against compulsory counterclaims where the insurance company initiates suit, see *infra*), there is no tension with freedom of contract principles. *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 320 (1996), and cases and authorities cited.

defend against counterclaims). Furthermore, initiating suit to cure a title defect is generally an option available to the title insurer under a standard title insurance contract. A title insurer should not be penalized (in the sense of having to assume broad defense obligations) for doing what it may do under the contract — what not only may be the wise and prudent course, but also the course that is in the best interests of the insured. Moreover, we disagree with GMAC that it is the litigation initiated by a title insurance company that exposes the insured to the risk of third party claims. Instead, the exposure to risk comes from the title defect itself, not its method of cure. In this case, for example, Moore sued GMAC because, notwithstanding its receipt of Moore's demand letter pursuant to G. L. c. 93A, GMAC continued to pursue foreclosure with full knowledge, and prior to the resolution, of the title defect.[13] Moore may very well have sued GMAC for such intentional conduct even if First American had attempted to cure the title defect through negotiation as opposed to litigation. For this reason, we are unwilling to go so far as to say that First American invited the liability of Moore's action.

We might conclude differently if claims asserted in response to litigation initiated by a title insurer were compulsory counterclaims.[14] A title insurer may have a duty to defend an insured against compulsory counterclaims because failure to raise a compulsory counterclaim results in its permanent forfeiture. See Reporters' Notes to Mass. R. Civ. P. 13 (1973), Mass. Ann. Laws Court Rules, Rules of Civil Procedure, at 300 (Lexis-Nexis 2012-2013). Thus, a title insurer that initiates suit creates the risk of compulsory counterclaims being asserted against the insured. However, we expect the circumstance of the assertion

---

[13]Specifically, Moore challenges GMAC's intentional acts of communicating with her regarding the note and mortgage after having been asked not to, sending correspondence addressed to her husband after receiving notification that he was deceased, taking photographs of the property, and otherwise pursuing or threatening to pursue foreclosure on the property before the title and mortgage issues were resolved.

[14]A counterclaim is compulsory if "the court has power to give the relief sought . . . [and] the claim arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim." J.W. Smith & H.B. Zobel, Rules Practice § 13.10 (2d ed. 2010). See Mass. R. Civ. P. 13(a), as amended, 423 Mass. 1405 (1996).

of compulsory counterclaims to arise infrequently in response to litigation initiated by a title insurer because a counterclaim is only "compulsory" where it is within the subject matter jurisdiction of the court where suit is initiated, and suits to cure title defects are often brought (as here) in Land Court.[15] See Mass. R. Civ. P. 13 (a), as amended, 423 Mass. 1405 (1996). See also J.W. Smith & H.B. Zobel, Rules Practice §§ 13.10-13.11 (2d ed. 2010). Title insurers that initiate suit to cure a title defect in the Land Court expose insureds to very little risk of compulsory counterclaims because the Land Court is such a limited forum. Compare G. L. c. 185, § 1 (Land Court jurisdiction), with G. L. c. 218, § 19 (District Court jurisdiction). Later consolidation (which, technically, was never effectuated here), does not convert a permissive counterclaim into a compulsory counterclaim for purposes of our analysis. See Reporters' Notes to Mass. R. Civ. P. 13, *supra* at 301 (counterclaims that avoid "compulsory" label). Therefore, in bringing the action to reform the deed or to equitably subrogate the mortgage in the Land Court as opposed to the Superior Court (which has concurrent jurisdiction, see G. L. c. 185, § 1 [*k*]), First American actually insulated GMAC from compulsory counterclaims for money damages. Consequently, Moore's only option was to sue elsewhere, which naturally bifurcated the title claims that First American had a duty to defend from the claims relating to GMAC's conduct that it did not.

*4. Conclusion.* We answer the certified questions as follows:

*Question one*: A title insurer does not have a duty to defend the insured in the entire lawsuit where one claim is within the scope of the title insurance coverage and other claims are not. The title insurer is only obliged to defend the insured on the covered claims.

*Question two*: With the possible exception of compulsory counterclaims, a title insurer that initiates litigation similarly

[15]By way of example: where a plaintiff brings an action in the Probate and Family Court seeking equitable relief and the defendant has a counterclaim for money damages arising from the same transaction (which thus falls outside the subject matter jurisdiction of the Probate and Family Court), the counterclaim is not "compulsory." See J.W. Smith & H.B. Zobel, Rules Practice, *supra* at § 13.11, at 233.

does not have a duty to defend the insured against all reasonably foreseeable counterclaims.

The Reporter of Decisions is directed to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of the court, to the clerk of the United States District Court for the District of Massachusetts, as the answers to the questions certified, and will also transmit a copy to the parties.