FOURTH DIVISION
DECEMBER 28, 2006

No. 1-05-1881

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
|           v. | ) | |
| | ) | |
| EVEREST INDEMNITY INSURANCE COMPANY, | ) | No. 04 CH 12241 |
|     Defendant-Appellant | ) | |
| | ) | |
| | ) | |
| (U.S. Equities Asset Management, LLC, and | ) | |
| 69 W. Washington Management Co., LLC., | ) | Honorable |
| | ) | Richard J. Billik, |
|     Defendants-Appellees). | ) | Judge Presiding. |

JUSTICE CAMPBELL delivered the opinion of the court:

Defendant Everest Indemnity Insurance Co. (Everest) appeals an order of the circuit court of Cook County, granting partial summary judgment in favor of plaintiff Hartford Fire Insurance Co. (Hartford) in a declaratory judgment action relating to a series of underlying lawsuits filed against defendants East Lake Management and Development Corp.,[1] U.S. Equities Asset Management, LLC, and 69 W. Washington Management Co., LLC, following an October 17, 2003, fire at the building located at 69 W. Washington Street in Chicago, Illinois.

---

[1] East Lake Management and Development Corp. was dismissed from the underlying lawsuits prior to the filing of the motion for summary judgment at issue here, but the trial court's ruling addresses its defense obligations.

The record on appeal discloses that Hartford issued a special multiflex policy to U.S. Equities for the policy period from February 28, 2003, to February 28, 2004. U.S. Equities, 69 W. Washington and East Lake qualify as insureds under this policy, which provides for a $1 million per-occurrence limit and a general aggregate limit of $2 million.

Endorsement CG 22 70 11 85 of the Hartford policy provides in relevant part as follows:

"With respect to your liability arising out of your management of property for which you are acting as a real estate manager this insurance is excess over any other valid and collectible insurance available to you."

The Hartford policy also contains the following language:

"4. Other Insurance

***

b. Excess Insurance

This insurance is excess over:

***

(2) Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations for which the insured has been added as an additional insured by attachment or an endorsement."

Everest issued a policy to Aargus Security Services, Inc. (Aargus), for the policy period from December 1, 2002, to December 1, 2003. The Everest policy provides commercial general

liability coverage with limits similar to those of the Hartford policy. By endorsement, the Everest policy provides the following additional insured coverage:

"BLANKET WHERE REQUIRED BY CONTRACT

A. Section II – Who is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured."

The schedule refers back to the declarations, which name U.S. Equities, 69 W. Washington and East Lake as additional insureds.

The Everest policy also provides as follows:

A. Paragraph a. Primary Insurance of No. 4 Other Insurance of SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS is replaced by the following:

a. Primary Insurance

Insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below, except that we will not seek contribution from any party with whom you have agreed in a written contract or agreement that this insurance will be primary and non-contributory, if the contract was made prior to the subject 'occurrence' or offense."

On April 1, 2002, Aargus entered into a security contract with 69 W. Washington (Security Contract), which included labor, supervision and management services to help protect the building and its tenants against fire, theft, damage and trespassing. The Security Contract provides in part as follows:

"5. Insurance:

a. Service Contractor [Aargus] shall be required to satisfy such insurance requirements as are set forth in Exhibit D, which is attached hereto and incorporated by reference herein. Without limiting the generality of the foregoing, Contractor [Aargus] shall deliver Certificates of Insurance reflecting the existence of insurance coverages as set forth in Exhibit D and naming Manager [69 W. Washington] as an additional insured as set forth in Exhibit D.

Exhibit D to the Security Contract provides in part as follows:

"INSURANCE REQUIREMENTS

A. Service Contractor [Aargus] shall purchase and maintain the following insurance coverages and limits of liability:

\*\*\*

2. Commercial General Liability Insurance with a limit of liability of not less that $1 million each occurrence in aggregated combined single limit for bodily injury and property damage. The policy shall include Broad Form Blanket Liability Coverage, Personal Injury Coverage,

Independent Contractors Coverage, Broad Form Property Damage (including 'Completed Operations'), Blanket Explosion, Collapse and Underground Hazards Coverage, and Products – Completed Operations Coverage, which must be maintained for two (2) years after Final acceptance of the Work.

If the 1986 (or later) ISO Commercial General Liability Form is used, a per project annual aggregate is required.

*** 

B.  The insurance coverages described above shall be in the name of the Service Contractors [Aargus]; provided, however, the policies described in Items 1-4 above shall name as additional insureds each Owner and Manager and their respective officers, employers, agents and other such parties in interest as Owner may require. Such entities are as follows:

Additional Insured Entities:  <u>4</u>

1. <u>County of Cook, its Commissioners, employees and agents, individually and collectively</u>

2. <u>69 W. Washington Management Co., L.L.C.</u>

3. <u>U.S. Equities Asset Management, L.L.C.</u>

4. <u>East Lake Management & Development Corp.</u>

It is further understood that any insurance carried independently by the additional insured shall be excess, and non-contributory for any

liability arising directly or indirectly from the project.  It is further
agreed that the coverage afforded to an additional insured shall not
apply to the sole negligence of the Additional Insured."

Following the October 17, 2003, fire at the building located at 69 W. Washington Street, 21 lawsuits were filed naming Aargus,  U.S. Equities, 69 W. Washington and East Lake as defendants (underlying lawsuits).  The underlying lawsuits allege both direct and derivative liability on the part of  U.S. Equities, 69 W. Washington and East Lake.

On October 31, 2003,  U.S. Equities, 69 W. Washington and East Lake tendered the underlying lawsuits to both Hartford and Everest, seeking defense and indemnity.  On March 10, 2004, Everest accepted the defense of  U.S. Equities and 69 W. Washington, subject to a reservation rights, stating that if the facts ultimately proved show that the liability of  U.S. Equities and 69 W. Washington did not arise out of the ongoing operations of Aargus, Everest had no coverage obligation under its policy.  Everest later acknowledged a defense obligation to East Lake.

On July 29, 2004, Hartford filed this declaratory judgment action, seeking a declaration that Everest had the primary duty to defend against the underlying lawsuits, and pay all sums associated with their defense of the underlying lawsuits.  Hartford also sought a declaration that its policy was excess to the Everest policy and thus owed no duty to defend or indemnify until the Everest policy was exhausted.  Hartford further sought reimbursement of sums it already paid to defend the additional insureds.

On October 14, 2004, Hartford moved for partial summary judgment on the above issues. On November 16, 2004, Everest filed its opposition to partial summary judgment, arguing that: the claims alleged against U.S. Equities, 69 W. Washington and East Lake based on their sole

negligence trigger only the Hartford policy; the claims of derivative liability are the only claims requiring an analysis of the "other insurance" language in the Hartford and Everest policies; and where two carriers each owe a complete defense to the insureds, the defense should be shared. On February 2, 2005, the circuit court granted Hartford partial summary judgment. On May 3, 2005, the trial court granted Everest's motion for a finding that there was no reason to delay enforcement or appeal of the prior order under Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). This appeal followed.

## I

We begin by addressing the applicable standard of review. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). In making this determination, the evidence must be construed strictly against the moving party and liberally in favor of the nonmoving party. Travelers Insurance Co. v. Eljer Manufacturing, Inc., 197 Ill. 2d 278, 292, 757 N.E.2d 481 (2001). The construction of an insurance policy provision is a question of law that can be properly decided on a motion for summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391, 620 N.E.2d 1073 (1993). We review de novo a grant of summary judgment. General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284, 769 N.E.2d 18 (2002).

## II

On appeal, Everest claims that the trial court erred in applying an analysis of the "other insurance" language in the two policies to all of the claims in the underlying complaints to conclude that Everest had the primary duty to defend against all of them. An insurer's duty to

-7-

defend its insured is much broader than its duty to indemnify its insured. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage. United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). A court must compare the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has arisen. Outboard Marine, 154 Ill. 2d at 125. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. Dixon Distributing Co. v. Hanover Insurance Co., 161 Ill. 2d 433, 438-39, 641 N.E.2d 395 (1994). The allegations in the underlying complaint must be liberally construed in favor of the insured. Outboard Marine, 154 Ill. 2d at 125. In addition, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy. United States Fidelity & Guaranty Co., 144 Ill. 2d at 73.

Everest asserts that the trial court erred in applying an analysis of the "other insurance" language in the two policies to all of the claims because the underlying complaints contain allegations of direct negligence by the additional insureds--e.g., the failure to install or retrofit sprinklers--that Everest asserts fall completely outside of the policy it issued to Aargus, which covers the additional insureds "only with respect to liability arising out of [Aargus's] ongoing operations performed for that insured."

Initially, it must be noted that Everest cites absolutely no case law supporting its assertion in the section of its opening brief making the assertion. In a footnote in a later section of its brief, Everest acknowledges that our supreme court has held in cases like United States Fidelity & Guaranty Co. that if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy, but does so to assert that Hartford has the sole duty to defend. Yet this was the rule cited in the trial court's order imposing the duty to defend on Everest, and Everest offered no argument or authority explaining why that rule does not apply to Everest in this case. Indeed, in Everest's statement of facts, "Everest acknowledges that it has the primary duty to defend (and that Hartford's policy is essentially excess) with respect to claims covered under *** both policies, i.e., the claims asserting derivative liability against the Additional Insureds." Everest has thus conceded that one of the theories is within the potential coverage of the policy, but it does not explain why the general duty to defend does not arise under well-established Illinois case law.

In its reply brief, Everest cites cases addressing additional insured endorsements. American Country Insurance Co. v. James McHugh Construction Co., 344 Ill. App. 3d 960, 801 N.E.2d 1031 (2003); Village of Hoffman Estates v. Cincinnati Insurance Co., 283 Ill. App. 3d 1011, 670 N.E.2d 874 (1996); American Country Insurance Co. v. Kraemer Brothers, Inc., 298 Ill. App. 3d 805, 699 N.E.2d 1056 (1998); American Country Insurance Co. v. Cline, 309 Ill. App. 3d 501, 722 N.E.2d 755 (1999). See also National Union Fire Insurance Co. of Pittsburgh v. R. Olson Construction Contractors, Inc., 329 Ill. App. 3d 228, 769 N.E.2d 977 (2002). However, in each of those cases, the underlying complaint alleged direct negligence on the part of the additional insured without including a claim against the named insured; this court found in all

five instances that an underlying complaint that alleges negligence <u>only on the part of the additional insured</u> did not trigger a duty to defend or indemnify. See <u>James McHugh Construction Co.</u>, 344 Ill. App. 3d at 972. In this case, the underlying complaints include claims against the named insured and do not allege negligence only on the part of the additional insured, rendering these cases inapposite.

In <u>National Union Fire Insurance Co. of Pittsburgh v. Glenview Park District</u>, 158 Ill. 2d 116, 632 N.E.2d 1039 (1994), our supreme court addressed an exclusion in an insurance endorsement for "'damages arising out of the negligence' of the additional insured" and held that the insurer had a duty to defend. <u>Glenview Park District</u>, 158 Ill. 2d at 118. Glenview Park District (Glenview) entered into a contract with National Decorating Services (NDS) for NDS to paint portions of an ice center. NDS had a policy with the plaintiff insurer (National Fire Insurance). The policy included Glenview as an additional insured and an endorsement that excluded coverage for "damages arising out of negligence of the Additional Insured [Glenview]." <u>Glenview Park District</u>, 158 Ill. 2d at 120. An employee of NDS was injured on the job and filed a complaint against Glenview under both the Structural Work Act and common law negligence. The insurer refused to defend Glenview in the injured worker's action based on the exclusion in the endorsement. The supreme court found that the term "negligence" in the exclusion clause did not encompass actions based on alleged violations of the Structural Work Act and, therefore, the insurer of NDS had a duty to defend the additional insured, Glenview, with respect to the allegations of Structural Work Act violations. In turn, the supreme court held that since the insurer had a duty to defend Glenview for the Structural Work Act claim, the insurer also became obligated to defend Glenview on the remaining counts of the underlying complaint. The supreme

court observed that "exclusionary provisions such as that found in the instant cause are to be construed narrowly rather than broadly." Glenview Park District, 158 Ill. 2d at 123.

Similarly, in this case, where Everest has already conceded it is the primary insurer with the respect to the derivative claims, it cannot deny the duty to defend against the claims of direct negligence, even assuming arguendo that such claims are excluded from the policy.

III

Everest next contends that Hartford owes a complete defense to the additional insureds for the claims of direct negligence, which requires Hartford to share the defense costs in this case. Everest relies in part on Home Insurance Co. v. Liberty Mutual Insurance Co., 266 Ill. App. 3d 1049, 641 N.E.2d 855 (1994). However, in Home Insurance, this court had to determine whether a certain endorsement was an escape clause or excess clause. Home Insurance, 266 Ill. App. 3d at 1052 ("[t]he principal argument * * * [is] whether endorsement 21 is an 'escape' clause or 'excess' clause"). After noting the difference between the two types of clauses, this court found the relevant provision to be an escape, not an excess, clause. Based on the holding that the subject provision operated as an escape clause, the two insurers were both primary carriers.

In this case, Everest concedes that the Hartford policy is an excess policy with respect to the derivative claims, but asserts that Hartford remains the primary insurer as to claims of direct negligence by the additional insureds. As explained above, this assertion is incorrect and is contrary to Illinois law.

Everest also cites Dearborn Insurance Co. v. International Surplus Lines Insurance Co., 308 Ill. App. 3d 368, 719 N.E.2d 1092 (1999), a tender of defense case. There were no issues of "other insurance" language addressed in the case. It is completely inapposite to this matter.

IV

Finally, Everest argues that the cases relied on by the trial court are all distinguishable from this case, based on the fact that the underlying complaints contain allegations of direct negligence against the additional insureds.  Again, Everest ignores the rule applied in cases such as  United States Fidelity & Guaranty Co. and Glenview Park District, extending at least as far back in time as Maryland Casualty Co. v. Peppers, 64 Ill. 2d 187, 194, 335 N.E.2d 24 (1976) (and cases cited therein).  Thus, the argument fails.

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINN, P.J., and NEVILLE, J., concur.