In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 12-2525, 12-2612 & 12-2691

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

*Plaintiff-Appellee/*
*Cross-Appellant,*

*v.*

CHICAGO TITLE INSURANCE COMPANY,

*Defendant-Cross-Claim Plaintiff-Appellant/*
*Cross-Appellee,*

*v.*

WESTERN CAPITAL PARTNERS LLC,

*Defendant-Cross-Claim Defendant-Appellee/*
*Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 7063 — **Matthew F. Kennelly**, *Judge.*

ARGUED APRIL 2, 2013 — DECIDED NOVEMBER 13, 2014

Before FLAUM, ROVNER, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. This insurance dispute is governed by Illinois law and raises a question of first impression in that state: May a title insurer contractually limit its duty to defend its insured to claims or causes of action specifically covered by its policy?

The question arises in complex coverage litigation between Philadelphia Indemnity Insurance Company, a general liability carrier; Chicago Title Insurance Company, a title insurer; and Western Capital Partners LLC, a high-risk real-estate lender insured by both companies. When Western Capital attempted to foreclose on some mortgaged commercial property in Chicago, the property owners responded with a separate lawsuit alleging that Western Capital had breached its contract, committed fraud and other torts, and violated state consumer-protection statutes. Western Capital tendered the defense to Chicago Title, which accepted the tender, but only as to claims potentially covered by its title policy. Western Capital then looked to Philadelphia Indemnity, and this satellite coverage litigation ensued.

Chicago Title's policy specifically limits its duty to defend to claims that are covered by its policy—that is, claims involving defects in title or lien priority and other claims adverse to the insured's title. The district court declined to enforce this limiting language and instead applied the "complete defense" rule, holding that Chicago Title had a duty to defend the entire lawsuit. Chicago Title appealed.

We reverse. An insurer's duty to defend its insured is contractual. General liability insurance indemnifies against liability for damages arising from a broad array of acts and omissions and promises to defend any suit seeking damages arising from a covered loss or occurrence. A promise to defend a "suit" is construed as a promise to defend the *entire* suit even if only one or some of the claims are covered by the policy. This is known as the "complete defense" rule, and it is recognized in Illinois, as elsewhere.

Title insurance is different. Unlike the broad indemnity and defense duties contractually assumed by general liability insurers, title insurance only indemnifies against losses incurred by reason of defects in title and specifically limits the insurer's duty to defend to claims that are within the policy's coverages. The Illinois Supreme Court has never applied the complete-defense rule to title insurance; indeed, it has not applied the rule outside the context of general liability insurance. Only one state supreme court has addressed whether the complete-defense rule applies to title insurance and held that it does not. *See GMAC Mortg. LLC v. First Am. Title Ins. Co.*, 985 N.E.2d 823, 828 (Mass. 2013). We think the Illinois Supreme Court is likely to agree. Accordingly, we hold that the contractual limits on Chicago Title's duty to defend are enforceable and remand for further proceedings consistent with this opinion.

## I. Background

In June 2006 Western Capital made a $2.77 million loan to finance the development of a mixed-use commercial building

on Ridgeland Avenue on Chicago's south side. The loan was secured by three mortgages on the developers' property: a first mortgage on the Ridgeland Avenue property and second mortgages on two other properties. The development apparently faltered, and in 2007 Western Capital initiated foreclosure proceedings in Cook County Circuit Court. This spawned extensive litigation regarding the Ridgeland Avenue project. Western Capital turned to its insurers to cover the costs associated with its defense in this litigation.

The mortgages were insured under a title policy issued to Western Capital by Chicago Title. The policy was written on the standard 1992 form developed by the American Land Title Association ("ALTA") and generally covers losses sustained by reason of defects in title and lien priority regarding the real property pledged as security for the loan. The policy also requires Chicago Title to "pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations."

Condition 4(a) specifically limits the insurer's duty to defend to claims falling within the policy's coverages:

> DEFENSE AND PROSECUTION OF ACTIONS;
>
> …
>
> Upon written request by the insured … , the Company [Chicago Title], at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title

> or interest as insured, *but only* as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. … The Company *will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.*

(Emphases added.) Defense costs do not decrease the policy limits, which are capped at the amount of loan proceeds actually disbursed on the policy's effective date—here, about $1.54 million.

Philadelphia Indemnity is Western Capital's general liability insurer. The Philadelphia Indemnity policy covers Western Capital for losses arising from negligent acts, errors, or omissions in connection with its professional services. The coverage is excess to other valid and collectable insurance.

The 2007 foreclosure action prompted a proliferation of litigation. The substantive details and procedural history are complex; we need mention only the main events here. In response to the foreclosure action, the developers sued Western Capital and other defendants in Cook County Circuit Court, Chancery Division. The new suit, filed in February 2008, alleged nine claims for relief against Western Capital, including claims for breach of contract, fraud, negligence, violation of state consumer-fraud statutes, and a quiet-title claim, to name a few. The gist of the complaint was that Western Capital and the other defendants had schemed to defraud the plaintiffs in connection with the real-estate development. We'll refer to this suit as the "*Ridgeland* lawsuit."

Western Capital tendered the defense to Chicago Title. A few months later, the *Ridgeland* lawsuit was consolidated with the foreclosure action. In August 2008 Chicago Title's counsel sent a lengthy letter to Western Capital explaining the title insurer's position regarding its duty to defend the *Ridgeland* lawsuit. Briefly, Chicago Title agreed to pay for the defense of four of the nine counts alleged against Western Capital; counsel explained that the remaining counts fell outside the title policy's coverages and thus outside the insurer's duty to defend. The letter concluded by approving Schiff Hardin LLP as Western Capital's choice of counsel.

On August 12, 2009, the circuit court dismissed all nine claims against Western Capital in the *Ridgeland* lawsuit. Eight claims were dismissed with prejudice and one without prejudice; as far as the record reveals, the claim dismissed without prejudice was never refiled.

On December 27, 2009, the defendants in the foreclosure action were permitted to amend their answer to include a 19-count counterclaim against Western Capital and other parties. Twelve of the new counterclaim counts were directed at Western Capital. Schiff Hardin forwarded an electronic copy of the amended answer to Chicago Title's counsel. On November 9, 2010, the circuit court dismissed all 12 counts against Western Capital with prejudice.

In December 2010, Chicago Title's counsel wrote to Western Capital regarding the defense costs associated with the counterclaim in the foreclosure action. Counsel explained that Chicago Title would pay defense costs for two of the 12 counts in the counterclaim—approximately 17% of the total—but the

remaining ten counts fell outside the title policy's coverages and thus outside the insurer's duty to defend.

In August 2011 the defendants in the foreclosure action moved for leave to file an amended counterclaim, repleading 11 of the 12 counts that had been dismissed and adding two new claims against Western Capital. This move was procedural only for the purpose of preserving the issues for appeal.[1] On September 23, 2011, the court granted the motion and permitted the refiling of the counterclaim, but "solely for the purpose of preserving issues for appeal." Chicago Title's counsel again wrote to Western Capital explaining that the 11 refiled counts did not trigger the insurer's defense duty because repleading was allowed only to preserve the issues for appeal. Counsel also explained that the two new counts fell outside the title policy's coverages.

Meanwhile, Philadelphia Indemnity had agreed to cover Western Capital subject to a reservation of rights, but had not paid for any defense costs. In October 2009—after the *Ridgeland* lawsuit was dismissed but before the filing of the multiple-

---

[1] Illinois courts adhere to the principle that "a party who files an amended pleading waives any objection to the trial court's ruling on the former complaints." *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 449 N.E.2d 125, 126 (Ill. 1983). Thus, plaintiffs seeking to appeal a dismissal must either stand on the dismissed counts and challenge the ruling on appeal or incorporate dismissed counts into subsequent pleadings. *See Ottawa Sav. Bank v. JDI Loans, Inc.*, 871 N.E.2d 236, 240–41 (Ill. App. Ct. 2007) (explaining Illinois law on the matter). This differs from Seventh Circuit practice. *See, e.g.*, *Weiss v. Cooley*, 230 F.3d 1027, 1031 (7th Cir. 2000) (noting that a notice of appeal from a final judgment is generally adequate to bring up everything that preceded it).

count counterclaim in the foreclosure action—Philadelphia Indemnity sued Chicago Title and Western Capital in Cook County Circuit Court seeking a declaration of coverage obligations and rights. Chicago Title removed the coverage litigation to federal court based on diversity jurisdiction. *See* 28 U.S.C. § 1332.

Chicago Title answered and cross-claimed against Western Capital seeking a declaration that it had no further obligation to defend the underlying litigation. Western Capital answered and filed a counterclaim against Philadelphia Indemnity and a cross-claim against Chicago Title. As relevant here, Western Capital's cross-claim against Chicago Title asserted claims for breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. *See* 815 ILL. COMP. STATS. 505/1 *et seq.*

Philadelphia Indemnity eventually settled with Western Capital, agreeing to pay half of the litigation costs incurred to the date of settlement (about $667,000) plus half of Western Capital's future costs in the underlying litigation. Western Capital agreed to reimburse Philadelphia Indemnity for any amounts recovered from Chicago Title that would result in a recovery exceeding Western Capital's total litigation costs.

Philadelphia Indemnity and Chicago Title then filed cross-motions for summary judgment. Philadelphia Indemnity argued that the title policy was primary and Chicago Title had a duty to defend the underlying litigation in its entirety. Chicago Title maintained that its duty to defend was contractually limited to claims potentially falling within the title policy's coverages. Chicago Title also sought summary judgment on

Western Capital's cross-claims against it, and Western Capital later filed its own motion for summary judgment.

Ruling on this bevy of motions, the district court applied the complete-defense rule and held that Chicago Title owed Western Capital a complete defense of all claims against it in the *Ridgeland* lawsuit and all counts against it in the counter-claim in the foreclosure action. Accordingly, the court entered judgment declaring that Chicago Title "shall bear 100% of [Western Capital's] defense costs in the underlying litigation," excluding costs associated with two "blackout periods"— periods of time in the underlying litigation when the claims against Western Capital were dismissed.[2] The court also rejected Western Capital's claims under the Consumer Fraud Act and resolved several remaining disputes not relevant here.

Chicago Title appealed, and Philadelphia Indemnity and Western Capital each filed a cross-appeal challenging certain aspects of the judgment.[3]

---

[2] The excluded "blackout periods" are August 12, 2009, to December 27, 2009, and November 9, 2010, to September 23, 2011.

[3] We address the cross-appeals only as necessary; some of the issues are irrelevant in light of our holding that the complete-defense rule does not apply. For example, Philadelphia Indemnity claims an entitlement to equitable subrogation. After the district court ruled that Chicago Title was responsible for 100% of Western Capital's defense costs, Philadelphia Indemnity asked for a monetary judgment in its favor on grounds of equitable subrogation based on the amounts it paid to settle with Western Capital. The district court denied this relief, and Philadelphia Indemnity's cross-appeal challenges that decision. Because the contractual limits on

(continued...)

## II. Discussion

The primary issue on appeal is the scope of Chicago Title's duty to defend Western Capital in the underlying litigation. The policy language specifically limits Chicago Title's defense obligation to claims alleging defects in title, lien priority, encumbrances "or other matter insured against by this policy," and disclaims any duty to defend "causes of action which allege matters not insured against by this policy."

There is no dispute about how to interpret this language. The parties agree that if the title policy is enforceable as written, Chicago Title is only responsible for the costs incurred in defending Western Capital against claims that potentially fall within the title policy's coverages. They further agree that if the limiting language in the policy is enforceable, Chicago Title is responsible for Western Capital's defense costs on just four claims in the *Ridgeland* lawsuit and two of the counter-claim counts in the foreclosure action.

Illinois law holds that insurance policies, like other con-tracts, are enforceable unless clearly contrary to public policy or manifestly injurious to the public welfare. *See Phx. Ins. Co. v. Rosen*, 949 N.E.2d 639, 645 (Ill. 2011); *Dubey v. Pub. Storage, Inc.*, 918 N.E.2d 265, 276 (Ill. App. Ct. 2009) ("Contractual limita-tions are generally held valid in Illinois, unless it would be against the settled public policy of the state to do so … ."). Illinois public policy is found in the state's constitution, its

(...continued)

Chicago Title's duty to defend are enforceable, we need not address this issue.

statutes, and its judicial decisions. *Rosen*, 949 N.E.2d at 645; *see also Progressive Universal Ins. Co. of Ill. v. Liberty Mut. Fire Ins. Co.*, 828 N.E.2d 1175, 1180 (Ill. 2005); *Ziegler v. Ill. Trust & Savs. Bank*, 91 N.E. 1041, 1045 (Ill. 1910) ("The public policy of the state or of the nation is to be found in its Constitution and its statutes, and, when cases arise concerning matters upon which they are silent, then in its judicial decisions and the constant practice of the government officials."). No provision in the state constitution or statutes is implicated here. Rather, the argument against enforcing Chicago Title's policy language rests entirely on a claim about Illinois public policy as found in its judicial decisions.

Philadelphia Indemnity and Western Capital contend that the contractual limitation on Chicago Title's duty to defend conflicts with the "complete defense" rule, which generally requires an insurer to provide a complete defense in a suit or action against its insured even if only one or some of the claims are potentially covered. The Illinois Supreme Court recognized the rule in 1976, *see Md. Cas. Co. v. Peppers*, 355 N.E.2d 24, 28 (Ill. 1976), and has restated it several times since, *see Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n.2 (Ill. 2010) (noting that if the insurer "has a duty to defend as to at least one count of the lawsuit, it has a duty to defend in all counts of that lawsuit" (citing *Peppers*, 355 N.E.2d at 28)); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042–43 (Ill. 1994); *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991); *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 163 (Ill. 1987).

None of these cases, however, involved title insurance. Instead, the state high court was construing the duty to defend in a general liability policy, which typically promises to defend the insured in "a suit" or "any suit" seeking damages for acts, omissions, or occurrences covered by the policy. *Pekin Ins. Co.*, 930 N.E.2d at 1014 (construing the duty to defend in a commercial general liability policy); *Glenview Park Dist.*, 632 N.E.2d at 1042–43 (construing the duty to defend in a comprehensive general liability policy); *Wilkin*, 578 N.E.2d at 930 (same); *Zurich*, 514 N.E.2d at 163 (same); *Peppers*, 355 N.E.2d at 28 (construing the duty to defend in a homeowner's policy).

The same is true of Illinois Appellate Court cases construing the complete-defense rule. *See Hartford Fire Ins. Co. v. Everest Indem. Ins. Co.*, 861 N.E.2d 306, 308 (Ill. App. Ct. 2006); *Am. Alliance Ins. Co. v. 1212 Rest. Grp., LLC*, 794 N.E.2d 892, 901 (Ill. App. Ct. 2003); *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1217 (Ill. App. Ct. 2001); *Int'l Ins. Co. v. Rollprint Packaging Prods., Inc.*, 728 N.E.2d 680, 685 (Ill. App. Ct. 2000); *Bedoya v. Ill. Founders Ins. Co.*, 688 N.E.2d 757, 762 (Ill. App. Ct. 1997); *JG Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 578 N.E.2d 1259, 1260 (Ill. App. Ct. 1991); *Altaf v. Hanover Square Condo. Ass'n No. 1*, 544 N.E.2d 1032, 1034 (Ill. App. Ct. 1989); *Fid. & Cas. Co. of N.Y. v. Nalco Chem. Co.*, 509 N.E.2d 446, 449 (Ill. App. Ct. 1987). Philadelphia Indemnity and Western Capital have not provided any contrary examples.

We know of no Illinois cases applying the complete-defense rule outside the context of general liability insurance. More specifically, no appellate court in Illinois has applied the

complete-defense rule to title insurance. Even so, Philadelphia Indemnity and Western Capital insist that the complete-defense rule is a requirement of public policy in Illinois, applicable to *all* insurance contracts, and *any* contractual limitation on an insurer's duty to defend is unenforceable. They also contend that allowing an insurer to "contract around" the rule would be manifestly injurious to the public welfare.

The district court agreed and refused to enforce the limiting language in Chicago Title's policy. Our review of that decision requires us to predict whether the Illinois Supreme Court would apply the complete-defense rule to title insurance. *See Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). We predict that it would not.

First, an insurer's duty to defend is contractual. *See Zurich*, 514 N.E.2d at 161; *Village of Lombard v. Intergovernmental Risk Mgmt. Agency (IRMA)*, 681 N.E.2d 88, 92 (Ill. App. Ct. 1997). General liability policies usually contain a broadly stated coverage grant promising to indemnify the insured against liability for injuries caused by covered acts and omissions, and typically provide that the insurer has the "right and duty to defend any 'suit' seeking … damages [for covered injuries]." *Pekin Ins. Co.*, 930 N.E.2d at 1014 (internal quotation marks omitted). This kind of duty-to-defend language is very broad. If at least one claim in a suit against the insured is potentially covered, the duty to defend is triggered; an insurer's promise to defend "a suit" or "any suit" requires the insurer to defend the *entire* suit. *Id.* at 1015 n.2 ("[I]f Pekin has a duty to defend as to at least one count of the lawsuit, it has a duty to defend in all counts of that lawsuit."). The complete-defense rule reflects

and enforces the broad defense promise in standard general liability policies and makes sense given the comprehensive coverage provided by this kind of insurance.

Title insurance is much narrower.[4] A title insurer only assumes risks associated with defects in property title. *See* B. BURKE, LAW OF TITLE INSURANCE § 2.01[A], at 2-5 (3d ed. Supp. 2013). The indemnification coverage is limited to losses from defects in title, lien priority, encumbrances, and other similar title risks, *id.* § 2.01[B], at 2-16–2-18 (Supp. 2011, 2013) & [C], at 2-22 (Supp. 2008), and the defense duty is likewise specifically limited to claims that are covered by the title policy, *id.* § 6.03[D].

The differences between general liability insurance and title insurance led the Supreme Judicial Court of Massachusetts to conclude that the complete-defense rule—what it called the "in for one, in for all" rule—does not apply to title insurance. *See GMAC Mortg.*, 985 N.E.2d at 828–29. The Massachusetts high court is the only state supreme court that has addressed this issue. We think the Illinois Supreme Court would find its analysis persuasive.

*GMAC Mortgage* addressed the precise issue before us in this case: "[W]hether the 'in for one, in for all' rule of general liability insurance defense—that an insurer must defend an entire action against an insured where its policy potentially

---

[4] Illinois regulates title insurance differently than other forms of insurance. Title insurers doing business in Illinois are regulated by the Department of Financial and Professional Regulation, not the Department of Insurance. *See generally* 215 ILL. COMP. STATS. 155/1 *et seq.*

covers any one claim—applies in the unique title insurance context." *Id.* at 828. To resolve that question, the court focused heavily on the unique nature of title insurance. The court began by observing that title insurance "is fundamentally different from general liability insurance" in that it is aimed "at risks that are already in existence on the date the policy is issued" rather than at future risks. *Id.* Title insurers "attempt to eliminate or reduce risks prior to the issuance of a title insurance policy" by searching real-estate records for title defects. *Id.* This difference results in "differing payment schemes and length of coverage as between title and general liability insurance." *Id.* at 828–29. Title insurance generally requires a single premium for indefinite coverage, while general liability insurance requires continuing, periodic payments over a fixed term of coverage. *Id.* at 829.

In addition, the court noted, title policies typically describe their defense obligations "in terms of defending particular *causes of action*" rather than in terms of defending "'suits' or 'actions,'" as is typical for general liability policies.[5] *Id.* at 829

---

[5] The standard-form contract issued in 1992 by the ALTA provides that the insurer

> shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. … The [insurer] will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(continued...)

n.8. Finally, the court observed that title-related claims are "discrete" and can be "bifurcated fairly easily from related claims." *Id.* at 829. This makes the central policy rationale behind the complete-defense rule—"that parsing multiple claims is not feasible"—inapplicable. *Id.*

Based on "the limited purpose and scope of title as compared to general liability insurance," the Massachusetts court concluded that "title insurers should not be obliged to defend against noncovered claims just because they may be asserted in litigation that also implicates title-related issues to a limited extent." *Id.* Accordingly, the court held that the complete-defense rule does not apply to title insurance. *Id.* at 831 ("A title insurer does not have a duty to defend the insured in the entire lawsuit where one claim is within the scope of the title insurance coverage and other claims are not.").

This analysis is both thorough and sound. We predict that the Illinois high court will follow the lead of its counterpart in Massachusetts and hold that the complete-defense rule does not apply to title insurance.

Western Capital warns that "disastrous consequences" will befall policyholders if courts enforce the limited-defense language in title-insurance policies. To the extent that the "disastrous consequences" are that title insurers won't cover defense costs for claims falling outside the policy's coverages,

---

[5] (...continued)
ALTA, Policy of Title Insurance, at Conditions and Stipulations ¶ 4(a) (Oct. 17, 1992). Chicago Title's policy is based on the 1992 ALTA form and contains virtually identical language.

that's just the nature of title insurance; the premiums charged for this form of insurance reflect the limited scope of the coverage. Western Capital also protests that enforcing the limited-defense language in title policies will allow title insurers to unilaterally determine the scope of their defense duty on a case-by-case basis, prompting increased coverage litigation. But insurers always decide coverage questions on a case-by-case basis. Illinois disincentivizes stingy coverage determinations through its estoppel doctrine (which in some situations actually *encourages* the use of declaratory-judgment actions to resolve coverage disputes)[6] and also through the attorney's fees provision of the Illinois Insurance Code, 215 ILL. COMP. STAT. 5/155 (providing for attorney's fees, costs, and

---

[6] An insurer owes a duty to defend unless it is willing to say that the allegations in the underlying complaint fail to state facts that bring the case within, or *potentially* within, the policy's coverage. *See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (citing *Conway v. Country Cas. Ins. Co.*, 442 N.E.2d 245, 247 (Ill. 1982)). The consequences for refusing to defend a claim later found to have been within or potentially within the scope of the policy's coverage are harsh: The insurer is forbidden from raising policy defenses to coverage, even if those defenses might have been successful had the insurer not breached its duty to defend. *See Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1135 (Ill. 1999) (describing the estoppel doctrine). Thus, when an insurer believes that the underlying complaint fails to trigger its duty to defend, Illinois recommends taking one of two courses of action: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Id.* at 1134–35; *see also Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1104 (Ill. 2005) (refusing to permit an insurer to recover defense costs associated with uncovered claims pursuant to a reservation of rights absent an express provision to that effect in the insurance contract).

sanctions where an insurance company's conduct or delay in resolving a claim is vexatious and unreasonable).

Accordingly, we hold that the complete-defense rule does not apply to title insurance. The limited-defense language in Chicago Title's policy is enforceable. Because the district court reached the opposite conclusion, the judgment must be reversed and the case remanded for entry of a new declaration of rights and obligations consistent with this opinion.

A few loose ends remain to be tied up before we close. In its cross-appeal Western Capital argues that the district court erred in holding that the affirmative defenses in the foreclosure action did not trigger Chicago Title's duty to defend. We disagree. The title policy doesn't require Chicago Title to "defend" against affirmative defenses. The policy language limits the insurer's defense obligation to "litigation in which any third party asserts a claim adverse to the title or interest as insured." An affirmative defense is not a "claim."[7] *Compare* BLACK'S LAW DICTIONARY 509 (10th ed. 2014) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will *defeat the plaintiff's … claim*, even if all the allegations in the complaint are true" (emphasis added)) *with id.* at 301 (defining "claim" as "[t]he assertion of an

---

[7] Condition 4(a) also uses the phrase "causes of action" interchangeably with the word "claim," but that doesn't change matters. An affirmative defense is not a "cause of action." *See* BLACK'S LAW DICTIONARY 266 (10th ed. 2014) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person").

existing right; any *right to payment or to an equitable remedy*, even if contingent or provisional" (emphasis added)).

It's clear under Illinois law that a *counterclaim* can trigger an insurer's duty to defend. *See, e.g.*, *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010) (applying Illinois law); *Mutlu v. State Farm Fire & Cas. Co.*, 785 N.E.2d 951, 956 (Ill. App. Ct. 2003). But "[a] counterclaim differs from an answer or affirmative defense. A counterclaim is used when seeking affirmative relief, while an answer or affirmative defense seeks to defeat a plaintiff's claim." *Norman A. Koglin Assocs. v. Valenz Oro, Inc.*, 680 N.E.2d 283, 288 (Ill. 1997); *see also* BLACK'S LAW DICTIONARY 427 (defining "counterclaim" as "[a] *claim for relief* asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim" (emphasis added)).

Perhaps an affirmative defense in a foreclosure action might be functionally characterized as a counterclaim to the extent that it alleges a defect in title or lien priority or some other title risk potentially covered by the title policy. Chicago Title doesn't disagree in theory, but we don't need to decide that question here. Western Capital didn't request a "defense" of the affirmative defenses in the foreclosure action until after the "true" counterclaims were dismissed. At that point Chicago Title denied coverage, having concluded that the affirmative defenses didn't state any potentially covered claim that the already-dismissed counterclaims had omitted.

A related loose end is whether Chicago Title owed Western Capital a continuing duty to defend against the potentially

covered counterclaims that were refiled following their dismissal with prejudice. The answer is no. Refiling was allowed solely for the purpose of preserving the issues for appeal. An insurer's defense obligations cease when "the claim against the insured is confined to a recovery that the policy does not cover." *Solo Cup Co. v. Fed. Ins. Co.*, 619 F.2d 1178, 1185 (7th Cir. 1980) (applying Illinois law). Chicago Title conceded at oral argument that its duty to defend the potentially covered claims in the underlying litigation would be triggered if those claims were to become live again. But because the dismissed counts cannot result in a recovery against Western Capital in the absence of a successful appeal reviving them, Chicago Title had no continuing defense duty to Western Capital.

A final question is whether the district court erred in entering summary judgment for Chicago Title on Western Capital's claims under the Illinois Consumer Fraud Act. It did not. There is no evidence whatsoever that Chicago Title violated the Act.

The Consumer Fraud Act prohibits, in relevant part, "unfair or deceptive acts or practices … in the conduct of any trade or commerce." 815 ILL. COMP. STAT. 505/2. The elements of a claim under the Act are: (1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive act. *See De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009). This framework is articulated in terms of "deceptive" acts and practices, but it applies to allegations of "unfair" acts and

practices as well. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010)); *Rockford Mem'l Hosp. v. Havrilesko*, 858 N.E.2d 56, 62 (Ill. App. Ct. 2006).

Western Capital alleges that Chicago Title's conduct was both deceptive *and* unfair. Either way the claim fails under well-established law. Western Capital's claim is nothing more than an allegation of breach of contract dressed up in Consumer Fraud Act clothing. "A breach of contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005). Accordingly, the claim is categorically non-actionable. It's also legally flawed, as we have already explained.

For the foregoing reasons, we REVERSE the judgment and REMAND for proceedings consistent with this opinion.